```
            IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                  *
ColomboBank, F.S.B.,
                                  *
     Appellant,
                                  *
v.
                                  *    CIVIL NO:  WDQ-02-4010
CHARLES GOLDSTEIN, Trustee
of the Estate of Maryland         *
Property Associates, Inc.,
et al.,                           *

     Appellee.                    *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM OPINION AND ORDER

Pending is ColomboBank's appeal of the judgment of the United States Bankruptcy Court for the District of Maryland (Schneider, C.J.), for Charles Goldstein, the Chapter 7 Bankruptcy Trustee (the "Trustee"), on his Complaint to Recover Preferential Transfers and Fraudulent Conveyances.  Because the issues have been fully briefed on appeal, and because "the decisional process would not be significantly aided by oral argument," oral argument is unnecessary.  Bankr. Rule 8012.

## BACKGROUND

An involuntary bankruptcy petition was filed on March 17, 1998, against Maryland Property Associates ("MPA") by Cumberland Associates Limited Partnership, Lansdowne Associates Limited Partnerships, Uplands Associates A Limited Partnership ("Uplands A"), and Uplands Associates B Limited Partnership ("Uplands B").  Mem. Op. at 2.  On March 24, 1998, an order for relief under

Chapter 7 was entered by the Bankruptcy Court upon the debtor's consent. *Id.*

The petitioning creditors were Maryland limited partnerships, each of which owned a U.S. Department of Housing and Urban Development ("HUD") mortgage-insured, low-income apartment complex in Maryland. *Id.* The debtor, MPA, was a Maryland corporation that managed those apartment complexes. *Id.* MPA was principally owned by Monte D. Greenbaum ("Mr. Greenbaum"), who is now serving a prison sentence for defrauding HUD. *Id.* at 3. Two weeks prior to filing the petition, the petitioning creditors learned that federal authorities were investigating the debtor's books and records. *Id.*

On March 17, 2000, the Trustee sued ColomboBank for the recovery of 24 transfers made by the debtor to ColomboBank during the three years prior to the filing of the bankruptcy petition. *Id.* The Trustee alleged that the transfers were recoverable as: (1) fraudulent conveyances under § 548 of the Bankruptcy Code; (2) fraudulent conveyances under Maryland fraudulent conveyance law; and (3) preferential transfers under § 547 of the Bankruptcy Code.

The Trustee grouped the transfers into four categories: (1) transfers made to ColomboBank on certain "share loans"; (2) transfers made to ColomboBank for Mr. Greenbaum's personal condominium in Ocean City, Maryland; (3) transfers made to

ColomboBank for Mr. Greenbaum's personal residence in Columbia, Maryland; and (4) transfers made for unexplained reasons. *Id.* at 4. The transfers totaled $444,523.89. *Id.*

Mr. Greenbaum took more money from the partnerships than he was owed for his property management services. Tr. at 113-119, 133. Around the same time, he borrowed money from ColomboBank to finance a line of credit on his personal residence and a condominium in Ocean City. *Id.* at 156-57, 174-76.

Because he was siphoning money from the partnerships, he was unable to show that the partnerships had a "cash surplus," or that all of the tenants' security deposits were properly escrowed, as required by HUD. *Id*. at 106-10. To conceal this, Mr. Greenbaum borrowed money from ColomboBank and deposited it in partnership accounts at ColomboBank. *Id.* ColomboBank retained a security interest in the loan proceeds themselves. *Id.* at 115-16, 236-38. Thus, the partnerships appeared to have sufficient capital; in reality, however, their accounts were encumbered by ColomboBank's security interest. *Id*. This conduct is the "share-loan" scheme.

ColomboBank denied knowledge of the share-loan scheme. Mr. Greenbaum also testified that ColomboBank was unaware of his scheme. *Id.* at 120. Thomas Knowles ("Mr. Knowles"), then president of ColomboBank, signed two audit forms indicating that the accounts were unencumbered; he also admitted that the loans

were unusual and created statements that showed that the accounts, at Greenbaum's request, were not bearing interest. *Id.* at 243-44, 46-47, 50-56. Mr. Knowles testified that he did not understand the forms, but would not have signed them if he had. *Id.* at 246. He was ultimately sued for his negligence in dealing with Mr. Greenbaum's loans. *Id*. at 300-03.

Eventually, Mr. Greenbaum, with MPA's money, paid off the share loans. *Id*. at 143-44. During this period, MPA was also paying ColomboBank for Mr. Greenbaum's personal-residence and condominium loans. *Id*. at 92-93.

Chief Judge James F. Schneider of the Bankruptcy Court held a three-day trial on the Complaint. By memorandum opinion, he granted full relief to the Trustee and ordered ColomboBank to pay the estate $444,523.89. Mem. Op. at 13.

ColomboBank now appeals Chief Judge Schneider's decision, arguing that it is not supported by the evidence adduced at trial. Further, ColomboBank argues that the court erred in allowing the Trustee to testify as an expert witness, and erred in allowing the Trustee to amend his Complaint at trial.

For the reasons stated below, the judgment of the Bankruptcy Court will be AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.

STANDARD OF APPELLATE REVIEW

A district court, sitting as an appellate court in bankruptcy, may not set aside a bankruptcy court's findings of fact unless they are clearly erroneous.  Bankr. Rule 8013; *First Nat'l Bank v. Stanley* (*In re Stanley*), 66 F.3d 664, 667 (4th Cir. 1995).  It reviews decisions of law *de novo*.  *First Nat'l Bank*, 66 F.3d at 667.  A finding of fact is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also McGahren v. First Citizens Bank & Trust Co.* (*In re Weiss*), 111 F.3d 1159, 1166 (4th Cir. 1996).

## ANALYSIS

The appellant urges this Court to reverse the Bankruptcy Court's judgment, contending that the Bankruptcy Court erred by (1) permitting the Trustee to amend his Complaint during trial; (2) permitting the Trustee to testify as an expert witness and to introduce evidence of insolvency at trial; and (3) entering judgment avoiding an aggregate of $444,523.89 in transfers.

A.   Amendment of the Complaint

In the Complaint, the Trustee sought to avoid a portion of the transfer of a $172,000 check from MPA to ColomboBank.  When the Complaint was filed, the Trustee sought the return of $72,000 of that transfer, because the Trustee believed that only that

portion of the check was avoidable. Tr. at 10. Throughout discovery, the Trustee sought an explanation from ColomboBank for the distribution of the remainder of the transfer, to determine whether it was avoidable. At trial, ColomboBank could account for the distribution of only $52,963.88 of the check and was able to prove that portion was not avoidable. With no explanation for the remainder, the Trustee sought to conform the pleadings at the end of the trial to seek the remaining $119,036.12 of the transfer. Tr. at 11.

ColomboBank has argued that the Bankruptcy Court abused its discretion by allowing the Trustee to amend his pleadings at the end of the trial. ColomboBank also argued that it was prejudiced because it was unable to present evidence or prepare witnesses on the claim for additional damages. Appellant's Br. at 27.

The Bankruptcy Court did not abuse its discretion in allowing the Trustee to amend his pleading to conform to the evidence at trial. *See Quillen v. Int'l Playtex, Inc.,* 789 F.2d 1041, 1043 (4th Cir. 1986)(amendment of pleadings to conform to the evidence under Rule 15(b) is reviewed for abuse of discretion). ColomboBank was, at all times, on notice that the Trustee was seeking to avoid all transfers made to ColomboBank within the relevant three-year time frame. In fact, the Trustee's Complaint sought to have the entire transfer avoided. Tr. at 345. Because ColomboBank could not prove that the

remainder of the $172,000 transfer was not avoidable, the Bankruptcy Court allowed the Trustee to amend his Complaint.

    B.    <u>Trustee As An Expert Witness</u>

ColomboBank has argued that the Bankruptcy Court erred in permitting the Trustee to testify as an expert witness, despite the Trustee's failure to disclose himself as an expert witness in his interrogatories or Rule 26 disclosures. The Trustee has countered that he was disclosed as an expert witnesses in the pre-trial statement.

Rule 37(c)(1) does not require witness preclusion for untimely disclosure if there is a substantial justification or if missing the deadline is harmless. *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3rd Cir. 1995); 8A Charles Alan Wright et al., Federal Practice and Procedure § 2289.1 (2d ed. 1994). The trial judge has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless. *See Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996).

The bankruptcy judge did not abuse his discretion is allowing the Trustee to testify. At trial, ColomboBank did not dispute the Trustee's qualifications as an expert witness, nor offer evidence that the debtor was solvent. Trans. at 41. The Trustee had knowledge of the debtor's insolvency because he had examined the debtor's books and records. Trans. at 43. Thus,

7

his admission as an expert was irrelevant, as he could have testified about insolvency from his knowledge of the debtor. Accordingly, any possible error was harmless, and this Court will affirm the Bankruptcy Court's admission of his testimony.

    C.   <u>Judgment</u>

        1.   <u>Avoidance of Transfers under Section 547 of the Bankruptcy Code</u>

The Bankruptcy Court first addressed the avoidability of pre-petition transfers under § 547 of the Bankruptcy Code. It correctly stated: "If the . . . payments transferred in the 90 days before the petition was filed were *for the obligation of the debtor*, these are preferences avoidable and recoverable by the trustee under Sections 547 and 550 of the Bankruptcy Code." Mem. Op. at 5 (emphasis added). The Bankruptcy Court, however, never determined whether the emphasized condition had been met. The three pre-petition transfers at issue included: (1) check no. 27678, dated January 7, 1998, in the amount of $1,199.92; (2) check no. 27925, dated February 6, 1998, in the amount of $1,198.85; and (3) check no. 104, dated March 11, 1998, in the amount of $1,198.85. Tr. at 211-12. All of these checks were paid to ColomboBank for Mr. Greenbaum's personal-residence loan. *Id.* It seems unlikely, therefore, that MPA made the transfers "for or on account of an antecedent debt owed by" *MPA*. 11 U.S.C. § 547(b)(2).

        2.   <u>Avoidance of Transfers Under the Maryland Uniform</u>

<u>Fraudulent Conveyance Act</u>

The Trustee advanced two other theories on which to avoid the transfers made three years preceding the petition. Both § 548 of the Bankruptcy Code and the Maryland Uniform Fraudulent Conveyance Act ("UFCA"), Md. Code Ann., Com. Law II §§ 15-201 through 15-214 (Repl. Vol. 2000), made applicable by § 544(b) of the Bankruptcy Code, permit the avoidance of a transfer if: (1) it was made with the actual intent to hinder, delay, or defraud a creditor; or (2) the debtor received less than reasonably equivalent value in exchange, and the debtor was insolvent. 11 U.S.C. § 548(a); Md. Code Ann., Com. Law II §§ 15-204, -207. Neither statute, however, permits a bankruptcy estate to recover such a transfer from a bona fide purchaser for value. 11 U.S.C. § 548(c); Md. Code Ann., Com. Law II § 15-209(a). While the Maryland law allows transfers to be set aside for three years preceding the petition, the federal law restricts avoidance to one year. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (Repl. Vol. 2002); 11 U.S.C. § 548(a). Because the Bankruptcy Court set aside transfers preceding the petition by three years, this Court assumes that they were set aside under UFCA.

     a.   <u>Conveyance Made with Intent to Defraud</u>

Section 15-207 of UFCA permits the avoidance of a transfer made with the actual intent to hinder, delay, or defraud present or future creditors. At least with respect to the four transfers

related to the share-loan scheme, the Bankruptcy Court concluded that MPA (in the person of Mr. Greenbaum) had the requisite fraudulent intent, and that ColomboBank "knew or should have known of the fraud."  Mem. Op. at 11-13.  The transfers included: (1) check no. 1116, dated September 17, 1996, in the amount of $24,406.41; (2) check no. 1315, dated May 17, 1997, in the amount of $9,076.01[1]; (3) check no. 1359, dated July 14, 1997, in the amount of $238,751.61; and (4) check no. 1374, dated August 12, 1997, in the amount of $3,946.15.  Mem. Op. at 3, 11.  They totaled $276,180.18.  *Id.* at 11.

The Bankruptcy Court devoted most of its attention to the $238,751.61 check.  Mem. Op. at 6-11.  It correctly concluded that ColomboBank applied the funds to pay off the remainder of five of the fraudulent share loans.  *Id.* at 11; Pl.'s Ex. 10; Tr. at 171, 285-86; Appellee's Br. at 37-38.  Two of the five loans were in the name of Uplands A, two more in the name of Uplands B, and one in the name of Freedom Associates Limited Partnership.  Pl.'s Ex. 10.  The outstanding principal balance on the loans totaled $233,000; the interest, $5,751.61.  *Id.*

Upon receipt of the payment, ColomboBank's security interest in the affected partnership accounts terminated:  the money in

---

[1] The face amount of check no. 1315 is $11,395.64.  The record indicates, however, that only $9,076.01 of that amount was applied to the share loans. *See* Appellee's Br. at 12 n.2.  Of the remainder, $1,168.06 went to Mr. Greenbaum's personal-residence loan, and $1,151.57 went to his condominium loan. *See id.* at 12, 13.

10

those accounts, which had belonged, in effect, to ColomboBank, belonged (again) to the partnerships. Thus, by check no. 1359, MPA returned to the partnerships $233,000 — money which Mr. Greenbaum had earlier embezzled, and so owed to the partnerships. To the extent of $233,000, therefore, the transfer caused the creditor partnerships no harm. Indeed, the payment inured to their benefit.

A transfer may not be challenged as fraudulent unless it prejudices the complaining creditors. *Ward v. Hollins*, 14 Md. 158, 167 (1859); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 637 n.10 (2d Cir. 1995)(applying New York UFCA); *Hicks v. Sovran Bank/Chattanooga*, 812 S.W.2d 296, 302 (Tenn. Ct. App. 1991)(applying Tennessee UFCA). Avoidance of $233,000 of the transfer by check no. 1359 would result in a windfall double recovery by the partnerships: they would get both the benefit of the funds as originally transferred and the benefit of the same funds as recovered by the bankruptcy estate and made available for re-transfer to themselves. Such a windfall the law does not countenance. "As long as the unsecured creditors are no worse off [because of the transfer] . . . no fraudulent transfer has occurred." *Harman v. First Am. Bank of Md.* (*In re Jeffrey Bigelow Design Group, Inc.*), 956 F.2d 479, 484 (4th Cir. 1992). Accordingly, with respect to check no. 1359, the judgment of the Bankruptcy Court must be reversed in the amount of $233,000.

11

The interest portion of the payment, however, in no way benefitted the partnerships. Rather, it exclusively benefitted ColomboBank. It took MPA assets (from whatever source) and made them unavailable to MPA's other creditors: i.e., it depleted the bankruptcy estate by $5,751.61. If Mr. Greenbaum had not taken out the share loans, he would not have used MPA funds to service his fraudulent debt. Under §§ 15-207 and 15-209 of UFCA, therefore, the Trustee may recover $5,751.61 of the transfer by check no. 1359 if ColomboBank "participate[d] in the fraudulent intent" of Mr. Greenbaum. *Berger v. Hi-Gear Tire & Auto Supply, Inc.*, 257 Md. 470, 475 (1970).

Actual knowledge of the fraud is equivalent to participation. *Oles Envelope Corp. v. Oles*, 193 Md. 79, 89 (1949); *Fick v. Perpetual Title Co.*, 115 Md. App. 524, 539 (1997). Constructive knowledge, however, suffices. *Fick*, 115 Md. App. at 540-41. If ColomboBank knew facts that would have put a reasonable, prudent person on inquiry as to Mr. Greenbaum's fraudulent share-loan scheme, the law "charges [ColomboBank], as [transferee], with knowledge of every fact that would have been learned after reasonable inquiry." *Id.* at 541. The Bankruptcy Court found that ColomboBank had at least constructive knowledge of the fraud. Mem. Op. at 13. That finding is not clearly erroneous. Therefore, with respect to check no. 1359, the judgment of the Bankruptcy Court must be affirmed in the amount

12

of $5,751.61.

With respect to the other share-loan checks — nos. 1116, 1315, and 1374 — the Bankruptcy Court never determined how ColomboBank applied the transferred funds. Nor have the parties directed this Court's attention to evidence in the record which would permit such a determination. *See Howard v. Fid. & Deposit Co. of Md.* (*In re Royale Airlines, Inc.*), 98 F.3d 852, 856 (5th Cir. 1996)(noting that a district court may affirm a bankruptcy court's judgment on any grounds supported by the record). To whatever extent payments by these checks reduced the principal amount of the share loans, the Trustee cannot avoid them. *See supra*. Accordingly, with respect to these checks, the judgment of the Bankruptcy Court must be vacated and remanded for relevant findings of fact.

With respect to the transfers unrelated to the share-loan scheme, the Bankruptcy Court made no specific findings: (1) whether Mr. Greenbaum actually intended to defraud MPA's creditors; and (2) whether ColomboBank knew or should have known of any such fraud. Because remand is necessary in any event, this Court leaves such fact-finding to the court below.

      b.   <u>Conveyance by Insolvent</u>

Section 15-204 of UFCA permits the avoidance of a transfer made by an insolvent debtor without fair consideration. Although the Bankruptcy Court found that MPA was insolvent at all relevant

times, *see* Mem. Op. at 5, it never determined whether it made any of the disputed non-share-loan transfers without fair consideration.  If the Bankruptcy Court, on remand, intends to rely on § 15-204 of UFCA to set aside these transfers, it must determine whether they were made without fair consideration.

## CONCLUSION

For the foregoing reasons, this Court AFFIRMS the evidentiary and procedural decisions of the Bankruptcy Court; AFFIRMS the judgment in favor of the Trustee in the amount of $5,751.61; REVERSES the judgment in the amount of $233,000; VACATES the remainder; and REMANDS the case to the Bankruptcy Court for further proceedings consistent with this opinion.

                                              /S/

                                  William D. Quarles, Jr.
                                  United States District Court Judge

Date:  July 16, 2003