IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| COLOMBOBANK, FSB, | * |
|     Appellant, | * |
| v. | *   Civil No. WDQ-02-4010 |
| CHARLES R. GOLDSTEIN, Trustee of the Estate of Maryland Property Associates, Inc., et al., | * * |
|     Appellee. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF
MOTION FOR REHEARING ON ORDER
REVERSING JUDGMENT OF THE BANKRUPTCY COURT**

    Charles R. Goldstein, Trustee (the "Trustee"), by and through his undersigned counsel, respectfully files this Memorandum in Support of his Motion for Rehearing on Order Reversing Judgment of the Bankruptcy Court pursuant to Fed. R. Bankr. P. 8015, and states as follows:

**Introductory Statement**

    On July 17, 2003, this Court entered an Order supported by a Memorandum Opinion (the "Opinion") reversing, in part, the judgment of the Bankruptcy Court. The Bankruptcy Court had ruled in favor of the Trustee on his complaint against appellee ColomboBank for recovery of certain fraudulent transfers. Part of the Bankruptcy Court's judgment reversed by this Court in the Opinion pertained to a fraudulent transfer that this Court

concluded would, if avoided and recovered by the Trustee, allow a double benefit or windfall to certain creditor partnerships of the bankruptcy estate.

The Trustee respectfully submits that this conclusion was based on the erroneous assumption that the creditor partnerships are the only creditors of Maryland Property Associates, Inc. ("MPA" or the "Debtor"), and that no other creditors of MPA were harmed by the fraudulent transfer sought to be avoided by the Trustee. In fact, there were and are many other creditors of MPA who were harmed by the fraudulent transfer and who will be further harmed by this Court's decision to allow ColomboBank to retain more than $276,000.00 of MPA's funds that was fraudulently transferred to it, removing such funds from the reach of legitimate creditors of MPA's bankruptcy estate. Accordingly, the Trustee requests that this Court reconsider its decision and affirm the judgment of the Bankruptcy Court.

## Factual Background

This Court correctly affirmed several factual findings of the Bankruptcy Court in its Opinion. MPA managed low-income apartment complexes in Maryland. Opinion at p. 2.[1] The apartment complexes were owned by certain partnerships (the "Partnerships"), and mortgages on those properties were insured by the U.S. Department of Housing and Urban Development ("HUD"). *Id.* After learning that federal authorities were

---

[1] Citations to the "Opinion" refer to the District Court's July 16, 2003 Memorandum Opinion. Any citations to the Bankruptcy Court's Opinion will be specifically identified as such.

investigating MPA's books and records, the Partnerships filed an involuntary bankruptcy petition against MPA. Opinion at pp. 2-3.

In the years leading up to the bankruptcy, the former president and principal owner of MPA, Monte Greenbaum ("Greenbaum"), had siphoned money from the Partnerships. Opinion at p. 3. As a result, he was unable to show that the Partnerships had a "cash surplus" or that all of the tenants' security deposits were properly escrowed, as required by HUD. *Id.* To conceal this, Greenbaum arranged for loans from ColomboBank, and deposited the loan proceeds into accounts at ColomboBank in the names of the Partnerships to give the false impression that the Partnerships had sufficient capital. *Id.* This conduct came to be known as the "share loan" scheme. *Id.* ColomboBank had knowledge of the fraud being perpetrated through the share loan scheme. Opinion at p. 12.

"*Eventually, Mr. Greenbaum, **with MPA's money**, paid off the share loans.*" Opinion at p. 4 (emphasis supplied). Specifically, Greenbaum gave ColomboBank MPA's check no. 1359 in the amount of $238,751.61. Opinion at 10. ColomboBank applied these MPA funds to pay off the fraudulent share loans. *Id.* "*Thus, by check no. 1359, **MPA** returned to the partnerships $233,000 – **money which Mr. Greenbaum had earlier embezzled, and so owed to the partnerships**.*" Opinion at 11 (emphasis supplied) That is, *MPA* satisfied, through the share loans, *Greenbaum's* fraudulently incurred obligations, with the knowledge of ColomboBank.

The Partnerships were the petitioning creditors in the MPA bankruptcy. Opinion at pp. 1-2. The Partnerships are not the only creditors of MPA. In fact, MPA has other creditors with significant claims against the bankruptcy estate of MPA. The Trustee testified at the hearing before the Bankruptcy Court that the total amount of the claims made against the bankruptcy estate is approximately $1.7 million, of which the Partnerships' claims total about $1.2 or $1.3 million.[2] Trial Transcript at pp. 61-64. Likewise, the Bankruptcy Court noted in its opinion that the Partnerships asserted only a "majority of claims against the bankruptcy estate," but not the entirety of claims. Bankruptcy Court Opinion at p. 12.

This Court concluded that check no. 1359 inured the benefit of the Partnerships, as it retired five outstanding share loans, and therefore reduced the Partnerships' claims against *Greenbaum* for his theft of the tenant security deposits. Opinion at p. 11. However, the transfer was made with MPA funds, and not with Greenbaum's funds. Opinion at p. 4. Because the transfer was made with MPA funds to retire Greenbaum's obligation, MPA's estate was depleted of funds that would otherwise be available to its other creditors. The transfer thereby prejudiced all of the creditors of MPA with claims against the estate. The Trustee stands in the shoes of all of the creditors who were harmed by the fraudulent transfers to ColomboBank.

---

[2] The Trustee retains the right to object to the claims asserted by the Partnerships. The Trustee anticipates that the Partnerships' claims may be reduced by such objections due to settlements the Partnerships reached with other parties. Trial Transcript at pp. 63-64. Any such objections that are sustained will reduce the Partnerships' claims.

## Argument

### A. A Motion for Rehearing is Permitted by Fed. R. Bankr. P. 8015.

Federal Rule of Bankruptcy Procedure 8015 permits a party to file a motion for rehearing by a district court sitting on appeal from a decision of the bankruptcy court. "Rule 8015 is silent as to the standard for granting a rehearing, but granting a motion for reconsideration is within the discretion of the court whose order is subject to the motion." *Shawnee State Bank v. First Nat'l Bank of Olathe (In re Winders)*, 202 B.R. 512, 517 (Bankr. D. Kan. 1996). "Bankruptcy Rule 8015 is silent as to the appropriate standard for granting relief. However, because Rule 8015 was derived from Fed. R. App. P. 40, it is appropriate to look to the appellate rule for guidance." *Olson v. United States*, 162 B.R. 831, 834 (Bankr. D. Neb. 1993) (citing to 9 *Collier on Bankruptcy* ¶ 8-15.04 at 8015-4 (15th ed. 1993)); *see* Fed. R. Bankr. P. 8015 (Advisory Committee Notes). "Petitions for rehearing under Fed. R. App. P. 40(a) are permitted to enable parties to notify, and to correct, errors of fact or law on the issues already presented; they are not meant to permit parties to assert new grounds for relief." *Sierra Club v. Hodel,* 848 F.2d 1068, 1100-01 (10th Cir. 1988) (per curiam). The Trustee respectfully submits that this Court should exercise it revisory powers under Bankruptcy Rule 8015 to correct an error of fact contained in the Opinion, and the legal conclusions that flowed from that error.

B.   **The District Court's Opinion Erroneously Assumed that No Other Creditors Were Harmed by the Share Loan Payments Made to ColomboBank.**

In its Opinion, the Court agreed with the Bankruptcy Court that the share loan scheme was a fraudulent scheme. Opinion at p. 10. The sole reason for the Court's reversal of the Bankruptcy Court regarding the payments relating to the share loans appears to be premised on the Court's assumption that the Partnerships were MPA's only creditors. This assumption is evidenced by the Court's statement that the transfers repaying the fraudulent share loans "caused *the creditor partnerships* no harm" and avoidance of the transfers would *"result in a windfall double recovery by the partnerships"*. Opinion at p. 11 (emphasis supplied). Indeed, the Court relied on case law holding that "[a] transfer may not be challenged as fraudulent unless it prejudices *the complaining creditors*." Opinion at p. 11 (emphasis supplied; citations omitted).

The Trustee represents the estate of the Debtor in this action, and therefore stands in the shoes of all of MPA's creditors, not just the Partnerships. 11 U.S.C. § 323. The "complaining creditors" are thus all of the creditors of the estate, and not just the Partnerships. The record demonstrates that substantial claims have been filed against the estate of the Debtor by creditors other than the Partnerships, and that these additional parties were prejudiced by the fraudulent transfers made to ColomboBank. The entirety of claims filed against the MPA estate is about $1,700,000.00.

Trial Transcript at pp. 61. The Partnerships' claims, which are still subject to any objections that may be filed by the Trustee, total $1.2 to $1.3 million and represent but a percentage of the claims asserted by creditors of MPA against the estate. Trial Transcript at pp. 61-64.

Greenbaum used the share loans to put money into the Partnerships' accounts, replacing the funds he had embezzled. MPA never had an obligation to ColomboBank or anyone else arising out of the share loans, and MPA received no benefit from the share loans. Instead, they were fraudulent loan transactions benefiting Greenbaum, made in furtherance of his fraud against the Partnerships, MPA and its creditors. The obligation to repay the share loans was thus Greenbaum's, and not MPA's. When Greenbaum used MPA funds to pay ColomboBank for the balances of the fraudulent share loans, he was using funds in which all of MPA's creditors were entitled to share to pay his own obligations. ColomboBank knew or should have known of this fraud. Opinion at p. 12.

The parties that benefited from the repayment of the share loans were Greenbaum, whose debts to the Partnerships were satisfied with MPA funds, and ColomboBank, which received the funds. Had ColomboBank not received the funds from MPA, it would have been forced to look to Greenbaum for payment, and Greenbaum was bankrupt and in prison. The other, non-Partnership creditors of MPA were harmed because MPA's funds

were used to pay obligations of Greenbaum and were no longer available to satisfy the claims of MPA's creditors.

### C. The Share Loan Transfers Were Made with the Actual Intent to Defraud and Are Thus Avoidable and Recoverable by the Trustee.

This Court cited the case of *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479 (4th Cir. 1992) for the proposition that no fraudulent transfer occurs if unsecured creditors are no worse off because of the transfer. As noted, creditors of the MPA bankruptcy estate are, in fact, worse off because of the transfer of MPA funds to ColomboBank to pay Greenbaum's obligations. In addition, the facts of the *Bigelow Design* case are readily distinguishable from the facts presented in the case before this Court.

In *Bigelow Design*, the principal owner of the debtor had entered into a credit relationship with a bank. The bank granted a line of credit in the name of the principal, but all the draws were made by, and all of the money under the line went to, the debtor. When the debtor went bankrupt, the trustee attempted to avoid the payments made by the debtor to the bank on account of amounts outstanding under the line of credit. The court in *Bigelow Design* determined that the transfers were not made with the actual intent to defraud creditors. 956 F.2d at 483-84. Instead, the court determined that the payments by the debtor to the bank were legitimate because the obligation being repaid was an obligation of the debtor, even

though the maker of the loan was technically the principal owner.  After all, the proceeds of the loan went directly to the debtor.

After determining that the transfers were not made with the intent to defraud, the court analyzed whether the transfers were avoidable because they were made for less than reasonably equivalent consideration at a time when the debtor was insolvent.  Again, the court determined that the debtor received reasonably equivalent consideration when it received the proceeds of the loan prior to the transfers in question.

The facts surrounding the fraudulent transfers of MPA's assets to ColomboBank as part of the fraudulent share loan scheme are, of course, quite different.  This Court has affirmed the finding of the Bankruptcy Court that the transfer was made with fraudulent intent.  Greenbaum intended to defraud creditors when he entered into the share loan scheme.  ColomboBank had at least constructive knowledge of the fraud, and thus "participated" in Greenbaum's fraudulent intent.  Opinion at p. 12.  Because the transfers were made with the actual intent to defraud, consideration for the transfer is not an issue.

In any event, MPA received no consideration from the share loans or the transfers repaying the share loans.  Unlike the debtor in the *Bigelow Design* case, MPA did not receive the proceeds of the loans from the bank.  Thus, the repayment of the loans with MPA's assets provided no benefit to MPA.  Because MPA did not receive the benefit of the share loans,

recovery by the Trustee will not act as a "windfall double recovery" to creditors of the estate, but will allow them to be put in the position that they would have enjoyed but for the fraudulent transfers in repayment of the fraudulent share loans.

This Court determined that the share loan payments were made as part of an actual fraud scheme.  Payments made with actual fraudulent intent are fraudulent regardless of whether any benefit or even fair consideration was paid to the transferor.  *Kline v. Inland Rubber Corp.*, 69 A.2d 774, 780 (Md. 1949).  In a case of actual fraud, such as here, the transferee must prove *not only full consideration but also good faith*, or else the transfer will be void.  *James v. Murray*, 120 A. 376, 381 (Md. 1923).  For a transfer of property to be valid against creditors, it must be bona fide, as well as for value.  *Mundy v. Jacques,* 81 A. 289, 291 (Md. 1911).  The Court has affirmed the finding of fraudulent intent by Greenbaum and participation in that fraudulent intent by ColomboBank.  The transfers in payment of the share loan scheme cannot have been made in good faith.

ColomboBank should not be allowed to benefit because of its participation in the fraud scheme.  It is undisputed that the principal bad actor in the share loan scheme was Greenbaum.  ColomboBank participated in the fraudulent intent of Greenbaum, either because ColomboBank knew or should have known of the fraud.  Opinion at pp.11-12.

Instead, this Court should treat all of the share loan payments the same way the Court treated the payment of the interest on the share loans. The Court first noted that the interest portion of the share loan payments benefited ColomboBank, and not MPA. The transfer of the MPA funds in payment of the interest on the share loans "took MPA assets (from whatever source) and made them unavailable to MPA's other creditors: i.e., it depleted the bankruptcy estate . . .." Opinion at p. 12. Thus, this Court ruled that the transfer may be avoided by the Trustee because ColomboBank "participated in the fraudulent intent of Greenbaum." *Id.* Likewise, all of the payments made from MPA funds to pay Greenbaum's obligations under the share loan scheme benefited ColomboBank and Greenbaum, and not MPA. All of those payments from MPA assets depleted the bankruptcy estate, and made those assets unavailable to MPA's creditors. The Trustee, who stands in the shoes of the estate's creditors, may thus avoid and recover such fraudulent transfers.

## **Conclusion**

The Bankruptcy Code and the Maryland Uniform Fraudulent Conveyance Act work in concert to ensure that creditors of an insolvent or bankrupt debtor receive proportionate shares of the debtor's estate. The statutory structure of the Bankruptcy Code is designed so that the Trustee may marshal the assets of the estate and distribute them according to the priority structure determined by section 507 of the Code. Should the Court

determine that the Trustee may not avoid the payments made as part of the share loan scheme to ColomboBank, then the only entities to benefit from such transfers will be Greenbaum and ColomboBank, the participants in the scheme. The legitimate creditors of MPA will be deprived of the assets so transferred. Such a result would allow ColomboBank and Greenbaum to benefit from their scheme, to the detriment of innocent creditors of the bankruptcy estate.

WHEREFORE, the Trustee respectfully requests that this Court enter an order (i) granting the Motion, (ii) vacating the July 16, 2003 Order and affirming the decision of the Bankruptcy Court as it applies to the $238,751.61 transfer and other payments made on the share loans, and (iii) granting the Trustee such other relief as is just and proper.

Dated: July 28, 2003.

/s/ Charles M. Campisi
John A. Roberts
Federal Bar No. 04969
Charles M. Campisi
Federal Bar No. 24119
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank and Trust Bldg.
Two Hopkins Plaza
Baltimore, Maryland  21201
(410) 244-7400

Counsel for Charles R. Goldstein, Trustee

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of July, 2003, a copy of the Motion for Rehearing re Order Reversing the Bankruptcy Court by Charles R. Goldstein, Trustee was served via electronic mail and the ECF system on Nelson Deckelbaum, Esquire and Stephen Nichols, Esquire, Deckelbaum, Ogens & Raftery, 3 Bethesda Metro Center, Suite 200, Bethesda, Maryland 20814.

/s/ Charles M. Campisi
Charles M. Campisi