UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| COLOMBOBANK, F.S.B., | : |
| Appellant, | : |
| vs. | : Civil No. WDQ-02-4010 |
| CHARLES R. GOLDSTEIN, Trustee of the Estate of Maryland Property Associates, Inc., et al., | : |
| Appellee. | : |

**OPPOSITION OF COLOMBOBANK, F..S.B. TO
MOTION FOR REHEARING ON ORDER REVERSING
JUDGMENT OF THE BANKRUPTCY COURT**

ColomboBank, F.S.B. ("ColomboBank") opposes the Motion for Rehearing on Order Reversing Judgment of the Bankruptcy Court (the "Motion") and supporting memorandum (the "Memorandum") filed by appellee Charles R. Goldstein, Trustee of the Estate of Maryland Property Associates, Inc. (the "Trustee") for the following reasons:

**Introduction**

On July 17, 2003 this Court entered an Order (the "Order") accompanied by a Memorandum Opinion (the "Opinion") reversing, in part, the judgment of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"). The Bankruptcy Court had ruled in favor of the Trustee on his complaint against ColomboBank for the recovery of alleged fraudulent transfers. This Court partially reversed the Bankruptcy Court's avoidance of the transfer by the debtor Maryland

Property Associates, Inc. ("MPA") of a check in the amount of $238,751.61 ("Check 1359").  This Court reversed the Bankruptcy Court's judgment because the payment of Check 1359 caused the release of ColomboBank's security interest in funds of the partnerships who were the petitioning creditors against MPA (the "Partnerships") which were deposited at ColomboBank.  The aggregate amount of these deposits was $233,000.00.  These amounts on deposit, "which had belonged, in effect, to ColomboBank, belonged (again) to the partnerships" after the transfer of Check 1359.  Opinion, at p. 11.

By Check 1359, "MPA returned to the partnerships $233,000.00 – money which Mr. Greenbaum had earlier embezzled, and so owed to the partnerships.  To the extent of $233,000.00, therefore, the transfer caused the creditor partnerships no harm.  Indeed, the payment inured to their benefit."  Because the financial result of the transfer to ColomboBank of Check 1359, combined with the release of the security interest in the Partnerships' deposit funds, was a wash for MPA's estate, this Court concluded that the Bankruptcy Court's avoidance of the transfer of Check 1359 "would result in a windfall double recovery by the partnerships."  Opinion, at p. 11.

## The Trustee's Motion

The Trustee has now filed his Motion in response to the Order and Opinion.  The Trustee asks the Court to reconsider and vacate its Order for two reasons, which are described in sections (B) and (C) of his Memorandum.

In section (B), the Trustee accuses this Court of misunderstanding the facts of the case and, because of this misunderstanding, erroneously concluding that the disputed financial transaction was a wash in which MPA suffered no damages.  The Trustee

argues that the Court mistakenly assumes that the Partnerships were MPA's only creditors. The Trustee then argues that, since Check 1359 benefited the Partnerships, but not the rest of MPA's creditors, the financial transaction cannot be considered a wash. The Trustee further argues that Check 1359 represents the use of MPA's funds to discharge the liability of Mr. Greenbaum[1] to the Partnerships for Mr. Greenbaum's embezzlement of the funds used to make Check 1359. In other words, MPA's money was being used to pay Mr. Greenbaum's debts. *See generally*, Memorandum, at pp. 6-8.[2]

In section (C) of the Memorandum, the Trustee alternatively argues that, even if the payment of Check 1359 was supported by consideration, it still must be avoided (presumably, even if this results in a double recovery) because the Bankruptcy Court concluded MPA made the transfer with actual fraudulent intent, and ColomboBank knew, or should have known, about the share loan scheme.

As ColomboBank will demonstrate below, neither of the Trustee's arguments has any merit. This Court in its Opinion correctly grasped the essence of the share loan repayment represented by Check 1359 - it was a wash for MPA's estate (with the exception of the interest component). To avoid Check 1359, as the Bankruptcy Court did below, is to unfairly extract a double recovery from ColomboBank. The Trustee's attempt to argue to the contrary is based on flagrant distortions of the record below. Moreover, the Trustee's argument that payments supported by consideration can be avoided if made with actual fraudulent intent is irrelevant, since the law is clear that this doctrine is not to be used to extract a double recovery from a transferee.

---

[1] Undefined capitalized terms herein have the meanings assigned to them in the Opinion.
[2] This argument conveniently ignores the fact that "MPA's money" was the funds that Mr. Greenbaum had stolen from the Partnerships, and therefore was never available for distribution to MPA's general creditor body.

Because the Trustee's arguments are based on distortions of the record and misapplications of law, it is important at the outset to precisely restate the factual background to this lawsuit.

**<u>Factual Background of the Check 1359 Transfer</u>**

As this Court noted in its Opinion, Mr. Greenbaum set up his "share loan" scheme to hide from HUD the fact that he had been taking funds out of the Partnerships for the benefit of himself and the equity owners of the Partnerships in amounts exceeding those permitted by HUD. Opinion, at pp. 2-3. He accomplished this, at least in part, by taking some of the Partnerships' security deposits. Opinion, at p. 3. He then covered up this act by creating the appearance of a security deposit account by borrowing money from ColomboBank and depositing the borrowed money into an account at ColomboBank, without informing HUD or the Partnerships' auditors that the money on deposit at ColomboBank was in fact borrowed money, subject to a security interest in favor of ColomboBank.[3] Opinion, at p. 3. Some time in July, 1997, just before the annual maturity date for the share loans, Mr. Greenbaum decided to end the share loan scheme. Tr. at p. 171. On July 14, 1997, MPA issued Check 1359 in the amount $238,571.61, which paid off all outstanding interest and principal on each of the outstanding share loans from ColomboBank to the Partnerships.

The Trustee's own witness, Mr. Greenbaum, testified that the money used to fund Check 1359 had itself been stolen from the Partnerships and deposited into MPA's account. Tr. at p. 143; Tr. at p. 172. In Mr. Greenbaum's words, MPA was a mere "conduit", through which money that had been stolen from the Partnerships flowed to pay

---

[3] ColomboBank denies that it knew of Greenbaum's scheme, or otherwise knowingly assisted him in any other wrongdoing. The issue of ColomboBank's knowledge of Greenbaum's wrongdoing, however, does not affect any arguments made in this Opposition.

4

off loans that, unbeknownst to the equity holders in the Partnerships, their general partner MPA had caused them to undertake.  Tr. at p. 132.

After the share loans were paid off by Check 1359, ColomboBank then sent to MPA - not the Partnerships - a series of wire transfers in an aggregate amount equivalent to the money that had been on deposit at ColomboBank (i.e. the principal amount of the share loans).  Tr. at pp. 307-312, and exhibits cited therein.  Mr. Greenbaum speculated that this money would have then been transferred by MPA back to the Partnerships, although, apart from this speculation, there is no evidence in the record showing this.  Tr. at p. 172.  The evidence therefore establishes that money stolen from the Partnerships was paid by MPA to ColomboBank, and that (except for the interest) this money was then transferred back to MPA by ColomboBank.  As far as MPA and all of its creditors are concerned, the transaction was a total wash, as this Court correctly concluded.[4]

The Trustee's Memorandum misrepresents the foregoing.  First, twisting beyond recognition the meaning of the Opinion's statement at p. 11 that the funds used to pay Check 1359 were "money which Mr. Greenbaum had earlier embezzled, and so owed to the partnerships[,]" the Trustee argues that Check 1359 represented a payoff by *MPA* (with MPA's funds) of the obligation that *Mr. Greenbaum* owed to the Partnerships as a result of his embezzlement.  The Trustee therefore argues that Mr. Greenbaum, the Partnerships and ColomboBank all benefited from the transfer, while MPA's non-Partnership creditors suffered, since money that could have otherwise been used to pay their claims was instead used to pay the Partnerships' claims against Mr. Greenbaum.  This ludicrous argument completely ignores the fact that "MPA's money" was in fact the

---

[4]  The Bankruptcy Court never concluded otherwise in its ruling below, but instead simply ignored the fact that the disputed transaction was a financial wash and that the effect of its ruling was to extract a double recovery from ColomboBank, which had already returned the transferred money back to MPA.

funds that had been embezzled from the Partnerships in the first place. Tr. at p. 143; Tr. at p. 172  There is no evidence in the record below that any of the money paid to ColomboBank in Check 1359 was anything other than funds stolen from the Partnerships and temporarily parked in MPA's bank account for the purpose of funding Check 1359. Tr. at p. 143; Tr. at p. 172.  Only by ignoring this fact can the Trustee pretend, as he does at page 4 of the Memorandum that, despite the fact that MPA was the knowing recipient of the money stolen from the Partnerships, MPA was not in turn liable to the Partnerships for the stolen money.

      Second, the Memorandum is conspicuously – if understandably – silent about the fact that ColomboBank subsequently repaid all of the transferred money back to MPA (with the exception of the interest component), not to the Partnerships.  To this, the Trustee may reply that the money paid back to MPA in reality belonged to the Partnerships, and that MPA was therefore obliged to repay this money to them.  But this is only the flip side of the fact that the money that MPA paid to ColomboBank was with funds stolen from the Partnerships.  The money MPA paid to ColomboBank no more belonged to it than did the money that ColomboBank paid back to it.  In Mr. Greenbaum's words, MPA was a mere "conduit" through which money flowed in each direction.  In the Trustee's Memorandum, the conduit only flows one way – the way that benefits the Trustee.

**Argument**

a. **This Court Did not Err in Assuming "that No Other Creditors Were Harmed by the Share Loan Payments Made to ColomboBank".**

Given the true facts underlying Check 1359, as set forth above, the Trustee's argument that MPA's non-Partnership creditors were harmed by the transfer falls apart. It is a truism of fraudulent conveyance law that a disputed transfer will not be avoided if the complaining creditors cannot show they were prejudiced by the transfer. *Holthaus v. Parsons*, 238 Neb. 223, 224, 469 N.W.2d 536, 538 (Neb. 1991) ("…the courts which have interpreted the [UFCA] have held that an action to set aside a conveyance cannot be maintained unless injury is sustained…"); *Davis v. Nielson*, 515 P.2d 995, 1000 (Wash.App. 1973) ("…prejudice to a plaintiff is essential to relief under the [UFCA].") This is the case even if the debtor made the transfer with actual fraudulent intent. *United States of America v. Johnston*, 245 F.Supp. 433, 440 (W.D.Ark. 1965) ("…no relief will be granted with respect to a transfer which, although abstractly fraudulent, does not operate to the prejudice of creditors' rights.") A party is not prejudiced by a transfer if the property that was transferred was not subject to attachment to pay the party's claim:

> "The property must be such that the creditor might have realized the whole or some portion of his claim therefrom; and a conveyance or transfer of property by a debtor cannot be fraudulent as against creditors, where they have no right, either at law or in equity, to subject the property to the payment of their claims."

37 *Corpus Juris Secundum*, Fraudulent Conveyances § 9 (West 1997).

Thus, courts have held that transfers of property held as tenants by the entirety[5], of a party's homestead[6], of exempt life insurance policies[7], and of property constituting trust funds in the hands of the debtor[8] did not prejudice the transferors' creditors, since they could not have been used to satisfy the creditors' claims in any event.

As described above, the funds used by MPA to pay Check 1359 had been stolen from the Partnerships. Stolen or other wrongfully converted property is subject to a constructive trust in favor of the party from whom the property was stolen. *Lackey v. Lackey*, 691 So.2d 990 (Miss. 1997); *G & M Motor Company v. Thompson*, 567 P.2d 80 (Okla. 1977); *Vorlander v. Keyes*, 1 F.2d 67 (8th Cir. 1924); *Brown v. New York Life Ins. Co.*, 152 F.2d 246 (9th Cir. 1945). Funds held in any type of trust, including a constructive trust, are not subject to the claims of the trustee's creditors:

> "Trust property is not liable for the trustee's individual debts, and cannot be reached by attachment, or execution, and this is true not only in express trusts, but also in resulting and constructive trusts. The rule applies although the trust is oral, and unless a statute provides otherwise, or unless the trustee obtains credit by reason of the trust, with the acquiescence of the beneficiary, even though the creditors have no knowledge of the existence of the trust, the estate being in the name of the trustee."

*Hagerstown Bank & Trust Company v. College of St. James*, 167 Md. 646, 176 A. 276 (1935) (quoting 65 *Corpus Juris Secundum*, Trusts, p. 535, 536). *See also*, *Carson v. Phelps*, 40 Md. 73, 99 (1874); *Doxen v. Wagner*, 142 Md. 441, 121 A. 254 (1923).

Because of the foregoing, the Trustee's charge that this Court failed to perceive that MPA had creditors apart from the Partnerships is beside the point. MPA paid

---

[5] *Hertz v. Mills*, 166 Md. 492, 171 A. 709 (Md. 1934).
[6] *Brown v. Lewis*, 520 F.Supp. 1114 (M.D.Fla. 1981).
[7] *Elliott v. Bryan*, 64 Md. 368, 1 A. 614 (Md. 1885)
[8] *Graham v. Onderdonk*, 33 N.J. 356, 164 A.2d 749 (N.J. 1960).

ColomboBank with money that had been stolen from the Partnerships, and which did not belong to it. Because that money had been stolen, it was never subject to the claims of any of MPA's non-Partnership creditors, and cannot now be avoided for the benefit of creditors other than the Partnerships. Thus, even had ColomboBank not returned the money, the Trustee could not avoid Check 1359 for the benefit of the general creditor body under the Maryland enactment of the UFCA.

    b. **A Debtor's Creditors Are Not Entitled to a Double Recovery Even Where the Original Transfer was Made with Actual Intent to Defraud**.

In the final section (C) of his Memorandum, the Trustee appears to argue that a transfer made with actual fraudulent intent is subject to avoidance even if the complaining creditor is not harmed by the transfer and even if the result of avoidance would be a windfall double recovery. He makes his argument in two stages.

First, he attempts to distinguish *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479 (4th Cir. 1992), which this Court had cited for the proposition that double recoveries are prohibited in fraudulent conveyance law, by arguing that *Bigelow* dealt only with constructively fraudulent transfers. He cites no cases, however, showing how this distinction makes any difference (e.g. cases holding that double recoveries are permissible against the recipient of an actually fraudulent transfer).

This failure is unsurprising, given the ample precedent holding that even transfers made with actual intent to defraud creditors will not be set aside unless the creditors can show they were prejudiced by the transfer. *United States of America v. Johnston*, 245 F.Supp. at 440 ("…no relief will be granted with respect to a transfer which, although

9

abstractly fraudulent, does not operate to the prejudice of creditors' rights."); *Holthaus v. Parsons*, 238 Neb. 223, 224, 469 N.W.2d 536, 538 (Neb. 1991) ("…the courts which have interpreted the [UFCA] have held that an action to set aside a conveyance cannot be maintained unless injury is sustained…"); *Davis v. Nielson*, 515 P.2d 995, 1000 (Wash.App. 1973) ("…prejudice to a plaintiff is essential to relief under the [UFCA].")

More specifically, as stated by the leading treatise on fraudulent conveyances:

> The grievance asserted under the theory of fraudulent conveyance is that the property has been put beyond the reach of process normally available to creditors; hence all persons involved in the wrongdoing are responsible for the property, and its proceeds or value. *It follows, then that if a transferee should surrender the property to the debtor, together with its interim earnings, prior to an institution of an attack by creditors, he will be relieved of all liability.* Such, indeed, is the rule ….

Glenn, *Fraudulent Conveyances and Preferences*, § 57 (William S. Hein & Co., Inc. 2001) (emphasis added) *Accord*, *Vinlis Construction Co. v. Roreck*, 325 N.Y.S.2d 457, 464 (Sup.Ct.N.Y. 1971) ("…surrender of the property to [the debtor] would exonerate [the transferee] from liability."); *United States of America v. Brand*, 346 F.Supp. 279, 283 (N.D.Ohio 1972) (…the courts have uniformly held that transferee liability may not be imposed upon a transferee who reconveyed the property in question to the transferor before any notice of claim of transferee liability was asserted ..."); *Muhl v. Tiber Holding Corp.*, 18 F.Supp.2d 514, 523 (E.D.Pa. 1998).

Instead of citing any authority holding that double recoveries are permissible in instances of actual fraud, the Trustee cites three Maryland cases for the entirely different proposition that "[p]ayments made with actual fraudulent intent are fraudulent regardless of whether any benefit or even fair consideration was paid to the transferor."

10

Memorandum, at p. 10.  *See*, *Mundy v. Jacques*, 116 Md. 11, 81 A. 289 (1911); *James, et al. v. Murray, et al.*, 142 Md. 101, 120 A. 376 (1923); *Kline v. Inland Rubber Corp.*, 194 Md. 122, 69 A.2d 774 (1949).

Each of these cases is irrelevant to the present case, however. ColomboBank's defense to the Trustee's claims is not that Check 1359 cannot be avoided because it was supported by adequate consideration, but rather that the money transferred thereby did not belong to MPA in the first place and, in any event, was later returned to MPA, resulting in no harm to the estate. *James*, *Mundy* and *Kline* are not relevant to this Court's decision because in none of these cases was a transfer avoided which had already been returned to the debtor by the transferee. Nothing in any of these decisions implies, much less explicitly holds, that Maryland fraudulent conveyance law permits double recoveries to be extracted from transferees.

In any event, Maryland law makes clear that even recipients who are willing participants in the scheme of the transferor and who do not voluntarily return the transferred property (as ColomboBank did) are nevertheless entitled to credits for amounts paid to the debtor's creditors and for improvements to the transferred property. *Chatterton v. Mason*, 86 Md. 236, 37 A. 960 (1897) (Transferee with knowledge of debtor's fraudulent intent is nevertheless entitled to a credit for post-transfer payments to debtor's creditors); *Williams v. Chew*, 92 Md. 9, 48 A. 43 (1900) (Willing participant in debtor's fraudulent scheme is nevertheless entitled to a credit for improvements made to transferred property). This is obviously because the goal of fraudulent conveyance law, even in cases of actual fraud, is, as the *Bigelow* court stated, merely to restore the status quo existing before the transfer. *Bigelow*, 956 F.2d at 484. On the basis of these

authorities, even assuming for the sake of argument that the property that was in fact returned to MPA had been instead returned to the Partnerships, ColomboBank would still be entitled to credit because the Partnerships were indisputably creditors of MPA with claims at least equivalent to the stolen money.

## Conclusion

This Court correctly concluded that the Bankruptcy Court erred when it failed to credit ColomboBank for those portions of the avoided transfers that ColomboBank subsequently returned to MPA, and which were used to retire MPA's debts to the Partnerships.  The Trustee's accusation that this Court incorrectly assumed that the Partnerships were MPA's only creditors is of no legal significance, since those creditors were not prejudiced by the transfer and re-transfer of the conveyed funds.  Even if they had been, Maryland case law establishes that ColomboBank would still be entitled to a credit for the sums returned.

WHEREFORE, ColomboBank requests the entry of an order

a. denying the Trustee's Motion; and

b. granting such other and further relief to which it is entitled.

Date:   August 14, 2003.

                        Respectfully submitted,
                        DECKELBAUM OGENS & RAFTERY, CHTD.


                        By:   <u>/s/ Stephen Nichols</u>
                              Nelson Deckelbaum
                              Md. Fed. Bar No. 01249
                              Stephen Nichols
                              Md. Fed. Bar No. 08194
                              3 Bethesda Metro Center
                              Suite 200
                              Bethesda, MD  20814
                              (301) 961-9200

                      Attorneys for ColomboBank, F.S.B.


<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 14th day of August, 2003 a copy of the foregoing Opposition was mailed, via first class mail, postage prepaid, to the following:

John Roberts, Esq.
Charles Campisi, Esq.
VENABLE, BAETJER & HOWARD, LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD  21201


                              <u>/s/ Stephen Nichols</u>
                              Stephen Nichols