IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| COLOMBOBANK, FSB, | * | |
| Appellant, | * | |
| v. | * | Civil No. WDQ-02-4010 |
| CHARLES R. GOLDSTEIN, Trustee of the Estate of Maryland Property Associates, Inc., et al., | * * | |
| Appellee. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY OF CHARLES R. GOLDSTEIN,
TRUSTEE, TO OPPOSITION OF
<u>COLOMBOBANK, F.S.B. TO MOTION FOR REHEARING</u>**

Charles R. Goldstein, Trustee (the "Trustee"), by and through his undersigned counsel, files this Reply to the Opposition of ColomboBank, F.S.B. ("ColomboBank") to the Motion for Rehearing, and states as follows:

**INTRODUCTORY STATEMENT**

The Trustee argued in his Motion for Rehearing that the District Court's July 17, 2003 Order reversing, in part, the judgment of the Bankruptcy Court should be vacated because this Court's conclusions were based on the erroneous assumption that the only creditors of the bankruptcy estate were certain partnerships (the "Partnerships") that owned apartment complexes managed by Maryland Property Associates, Inc. ("MPA" or the "Debtor"). In fact, as the Trustee demonstrated in the Motion, MPA has

creditors other than the Partnerships who were damaged by the fraudulent transfers at issue.  In addition, the Trustee argued that the transfers at issue are avoidable even if there was consideration because they were ***made with the actual intent to defraud*** and all of the creditors of the bankruptcy estate have been damaged.  The Opposition by ColomboBank fails to counter either of the Trustee's two arguments.

ColomboBank alleges throughout its Opposition that the money used to fund the share loan transfer was "stolen from the Partnerships." ColomboBank then argues that the Trustee is not entitled to avoid the transfers at issue because (i) the estate has no interest in stolen property or (ii) the net effect of the transfer is a wash.

ColomboBank is absolutely, 100% wrong on the facts.  The Bankruptcy Court expressly found in its opinion that "the money was not stolen."  Moreover, ColomboBank is wrong on the law.  Even if the money used to fund the fraudulent transfers had been stolen, the Bankruptcy Code and the cases interpreting it provide that any interest, even a possessory interest in stolen property, is an asset of the estate recoverable by the Trustee.  Thus, the money fraudulently transferred to ColomboBank was property of the estate, regardless of whether it was stolen.

ColomboBank is wrong on the facts and wrong on the law. Because this Court's decision was based on a mistaken factual assumption, the Trustee's Motion should be granted.

**ARGUMENT**

The Court should vacate its Order of July 16, 2003 because the decision was based on the erroneous assumption that the only creditors of MPA were the Partnerships that "benefited" from the fraudulent transfers. This apparently led to an erroneous conclusion that the Partnerships were the "complaining creditors" seeking to avoid and recover the fraudulent transfers. As the record shows, however, MPA had many creditors other than the Partnerships, and all of MPA's creditors were injured by the fraudulent share loan transfers. The "complaining creditors" seeking to recover the fraudulent transfers are thus all of the creditors of MPA, for whose benefit the Trustee brought the Complaint against ColomboBank. The fraudulent transfers should be avoided and recovered by the Trustee for distribution to all of the creditors of MPA, in keeping with the principles of the Bankruptcy Code.

In addition, the transfers were avoidable even if ColomboBank gave consideration for those transfers because the transfers were made with the actual intent to hinder, delay or defraud creditors. As demonstrated by the record below, MPA's creditors were damaged by the depletion of MPA's estate resulting from the fraudulent share loan payments.

The Opposition filed by ColomboBank did not address either of the two arguments made by the Trustee. Instead, ColomboBank clouded the issues by alleging facts ***that were directly contrary to the factual***

***findings made by the Bankruptcy Court*** and arguing law that is inapplicable to the facts as established by the Bankruptcy Court. The Trustee has addressed ColomboBank's Opposition below, however, the Motion for Rehearing is unopposed by ColomboBank and stands on the arguments that: (i) MPA has creditors other than the Partnerships who were damaged by the share loan transfers and (ii) transfers made with fraudulent intent are avoidable even if the transferee has given consideration, and certainly, where that consideration was not paid to the transferor, MPA.

### A.     The transfers made to ColomboBank were made from property of the Debtor.

The arguments made by ColomboBank in its Opposition are based on a misstatement of fact -- that the money used to fund the largest share loan payment, Check 1359 in the amount of $238,751.61, was stolen from the Partnerships. Opposition, *passim*. ColomboBank's misstatement ignores the straightforward finding of fact made by the Bankruptcy Court and set forth in its opinion: "[t]his Court finds that the money was not stolen. . . ." Bankruptcy Court Opinion, pp. 6, 10.

ColomboBank cites to trial testimony by Monte Greenbaum ("Greenbaum"), a convicted felon who perpetrated the share loan scheme, to support its assertions that the transfers in payment of the share loans were funded by monies stolen from the Partnerships. However, when the Bankruptcy Court found that "the funds were not stolen," the Court clearly expressed the conclusion that it did not find Greenbaum, the convicted felon,

credible on this point. Bankruptcy Court Opinion at pp. 6,10. Instead, the Bankruptcy Court chose to believe the testimony of the Trustee that the source of the funds was a bank in Florida. Findings of fact made on the basis of credibility of witnesses by the trier of fact cannot be challenged absent an abuse of discretion, which does not exist here.

The finding by the Bankruptcy Court was supported by evidence in the record that the money used to fund Check 1359 was not stolen from the Partnerships. The Trustee testified that the records of MPA showed that the source of the funds for Check 1359 was a wire transfer made into MPA's Operating Account from a bank in Florida. Trial Transcript at p. 214. He further testified that MPA neither maintained any security deposits in Florida nor had any business in Florida. *Id.* Relying on this evidence, the Bankruptcy Court found that the money used to fund Check 1359 came from "other sources as well, including the transfer from the bank in Florida where there were no properties being managed by the debtor." Bankruptcy Court Opinion at p. 11. ColomboBank's assertion that the funds were stolen from the Partnerships is clearly wrong, and contrary to the factual finding of the Bankruptcy Court.

Based on this inaccurate assertion of fact, ColomboBank then argues that MPA had no rights in the stolen funds and the Trustee cannot avoid the transfer. This argument is legally incorrect. Section 544(b)(1) of the Bankruptcy Code provides that "the Trustee may avoid any transfer of an

interest of the debtor in property." As the Bankruptcy Court concluded, even where the funds in the debtor's possession are stolen, the debtor maintains an interest in those funds. *McLemore v. Third Nat'l Bank in Nashville (In re Montgomery)*, 983 F.2d 1389 (6th Cir. 1993). Even if Check 1359 was funded with stolen money, notwithstanding the Bankruptcy Court's express finding that it was not, the fraudulent transfer was still a conveyance of an interest of the debtor in property and may be recovered pursuant to Bankruptcy Code § 544(b).

ColomboBank also argues that MPA's creditors should have no rights to recover the transfer because stolen funds are subject to a constructive trust in favor of the party from whom they were stolen. This argument is wrong on two levels. First, the funds were not stolen, as found by the Bankruptcy Court. Second, a constructive trust does not magically arise even if property is stolen. The party seeking to assert the trust must provide proof that a trust was created, and the requirements of such proof are rigorous and must be by clear and convincing evidence. *Wimmer v. Wimmer*, 414 A.2d 1254, 1258, 287 Md. 663 (1980) (Proof of constructive trust must be by clear and convincing evidence); *Masters v. Masters*, 89 A.2d 576, 583, 200 Md. 318 (1952) (Both the existence and terms of constructive trusts must be proven by strict proof). Moreover, when the assets sought to be included in the trust are funds maintained in an account, there must be tracing of the funds. *Baltimore & Ohio R.R. v. Equitable Bank, N.A.*, 550 A.2d 407, 412, 77

Md. App. 320 (1988) (In order to impose a constructive trust there must be a specific tracing of funds to fraudulent or wrongful conduct).

ColomboBank did not produce any evidence of a constructive trust at trial, let alone evidence meeting the clear and convincing and strict proof evidentiary standards. Nor were the funds traced. In fact, the Bankruptcy Court found that the funds were commingled:

> The money came from other sources as well, including the transfer from the Bank in Florida where there were no properties being managed by the debtor.
>
> The source of the funding for the $238,000 check is unknown because of the commingling of funds. Neither Mr. Greenbaum nor the Bank's representatives could identify the source of those funds and so the funds have not been traced. There was no segregation of those funds. They cannot be traced to a specific source and therefore ***no constructive trust can be imposed.***

Bankruptcy Court Opinion at p. 11. (emphasis supplied.)

MPA's funds were the source of the monies used in making the payments on the share loans, including the $238,751.61 payment via Check 1359. ColomboBank's assertions that the funds were stolen from the Partnerships is false. Indeed, the Bankruptcy Court found that the money had not been stolen, but that even if it were, the Debtor retained a sufficient interest to warrant recovery under § 544. Moreover, ColomboBank did not establish the existence of a constructive trust. The funds used to pay Check 1359 should be available for distribution to all of MPA's creditors.

> **B.     The share loan scheme was not a "wash" for the unsecured creditors of MPA and the payment should be avoided and recovered by the Trustee for distribution to MPA's creditors.**

ColomboBank argues in its Opposition that the fraudulent transaction was a "wash for MPA's estate." Like ColomboBank's first argument, its second argument fails both on the facts and the law. At the outset, the argument depends on the misstatement of fact that runs throughout ColomboBank's Opposition -- that the funds used to make payment of Check 1359 were stolen from the Partnerships. As discussed in detail above, the Bankruptcy Court expressly found that the funds were not stolen and ColomboBank's argument is therefore based on a false presumption.

In addition, ColomboBank has glossed over the details of the share loan transactions. To clarify, the Bankruptcy Court found that Greenbaum fraudulently entered into the share loan scheme with the participation of ColomboBank. Bankruptcy Court Opinion at pp. 11-13. By fraudulently taking out loans in the names of the Partnerships without their knowledge or consent, the share loan scheme created a debt owed by ***Greenbaum*** to the Partnerships. However, the fraudulent transfers made in payment of the share loans were made with MPA's money.

It is useful here to revisit the banking practices of MPA, as described in testimony at trial and discussed in the Trustee's appeal brief. MPA had two principal banking accounts, hereafter referred to as the

"Operating Account" and the "Agency Account." Trial Transcript, pp. 51-54. The Operating Account contained funds belonging to MPA, earned as part of its management fee and used to pay MPA's own creditors. *Id.* at pp. 53-54. The Agency Account was an account in which MPA held funds as an agent for the owners of the properties that it managed, including the Partnerships. *Id.* at pp. 52-53. The Agency Account was used to pay the bills of those managed properties. *Id.* at pp. 51-52.

All of the checks paid to ColomboBank in payment of the share loan scheme came out of the ***Operating Account*** and, therefore, were paid with MPA's money. The four share loan payment checks, numbers 1116, 1315, 1359 and 1374, all bear the title "Maryland Property Assoc., Inc.", and are drawn on account number 6010130267, the Operating Account. Bankruptcy Court Opinion at p. 11 (identifying check numbers); Trustee Trial Exs. 1,2 (copies of checks). The wires from ColomboBank transferring the share loan deposits, however, were made into the ***Agency Account***, number 2003015369. ColomboBank's Trial Exs. 23,25,26,28,30,31 (wire receipts into account number 2003015369); See also, e.g., Trustee Trial Exs. 1 and 2 for various checks from account 2003015369 bearing the title "Maryland Property Group - Agency Account." An example of one such Agency Account check is number 23521, dated October 3, 1996.

The net result of the share loan scheme was that MPA's funds were fraudulently conveyed to ColomboBank, thereby covering Greenbaum's

debts to the Partnerships, and ColomboBank transferred money belonging to the Partnerships back to those Partnerships via the Agency Account. No funds of ColomboBank were ever transferred to MPA. Greenbaum benefited from this scheme because MPA paid his debts to the Partnerships. ColomboBank benefited because it was repaid on loans it made as part of a fraudulent scheme. The Partnerships may have benefited because their stolen security deposits were restored by virtue of MPA's payment, although the Partnerships sustained damage by virtue of the fact that the share loan scheme enabled Greenbaum to conceal his thefts for years. Bankruptcy Opinion at p. 12.

The clear losers in the share loan transactions were all of the non-Partnership creditors of MPA. Instead of MPA's funds being available to pay their claims, the funds were used to retire the share loans, paying only Greenbaum's debts to the Partnerships. The fraudulent conveyance to ColomboBank cannot have been a "wash for MPA's estate," because the transaction did not benefit all of its creditors. Even if the fraudulent share loan scheme did not harm the Partnerships, it harmed MPA's creditor body as a whole because the scheme resulted in MPA's funds being fraudulently transferred beyond the reach of all of MPA's creditors.

The "complaining creditors" in this case are all of MPA's creditors, not just the Partnerships. The "complaining creditors" thus were prejudiced by, and did not benefit from, the fraudulent transfer. The Trustee

acts for the benefit of all of the creditors of the bankruptcy estate -- that is, the "complaining creditors" in this case. Because the creditors of MPA were prejudiced by the fraudulent transfers, the share loan payments should be avoided and recovered by the Trustee.

### C. Avoidance of the fraudulent transfer would not result in a windfall double recovery by the complaining creditors.

Distribution of the avoided share loan payments would not constitute a "double recovery" to MPA's creditors, as ColomboBank argues, because MPA's non-Partnership creditors have yet to "recover" anything. Again, ColomboBank's argument is based on the false presumption that the only creditors of MPA, and thus the only creditors who would receive a distribution from the recovered funds, are the Partnerships. Because the factual predicate is false, the argument fails. The creditor body as a whole is worse off as a result of the fraudulent transfers, because that money is not now available to pay their claims against the bankruptcy estate. The creditor body, represented by the Trustee, did not receive a benefit from the fraudulent transfer or from ColomboBank's subsequent transfer of funds to the Partnerships. The recovery of the fraudulently transferred funds and distribution to creditors thus will not result in a windfall double recovery.

> **D.    ColomboBank did not re-convey the fraudulently transferred funds to the transferor, and thus is entitled to no defense or credit.**

ColomboBank argues that it is not required to return the fraudulent conveyance, or that it is at least entitled to a credit, based on the theory that it already returned the fraudulently conveyed funds to MPA. As detailed above, this premise is inaccurate. First, ColomboBank did not transfer the money to MPA, but only to an agency account that MPA was maintaining for the Partnerships. As such, ColomboBank did not re-convey MPA's fraudulently transferred funds back to the transferor, but instead sent those funds to third parties. In addition, when ColomboBank transferred the money in the share loan accounts to the Agency Account maintained by MPA, it was not transferring its own funds. By the time of the transfer, ColomboBank had already released its lien against those accounts, and the money in the share loan accounts belonged to the Partnerships in whose name the accounts were established. The defense asserted by ColomboBank thus fails, and the Trustee is allowed to avoid and recover the fraudulently transferred funds of MPA.

ColomboBank has cited cases standing for the proposition that participants in a fraud scheme are entitled to credits if they voluntarily return the transferred property to the transferor. Opposition at p. 11. However, it is of no moment that ColomboBank gave consideration for MPA's payments by releasing the security interest it held over the deposit accounts.

That consideration inured solely to the benefit of Greenbaum, as it reduced his debts to ColomboBank and the Partnerships. ColomboBank gave no consideration to MPA, the transferor. The fraudulent transfers were made from MPA to ColomboBank. Because ColomboBank did not "return" the transferred property to MPA, it is not entitled to any credit.

### E.   The Trustee is not tainted by Greenbaum's participation with ColomboBank in the fraudulent share loan scheme.

A recent case from the Court of Appeals for the Third Circuit dealt with a virtually identical factual scenario and held that under the Bankruptcy Code fraudulent transfers are avoidable and recoverable by the Trustee for distribution among all of the debtor's creditors notwithstanding the participation of the debtor's principal in the fraud. *In re The Personal and Business Insurance Agency*, 334 F.3d 239 (3d Cir. 2003).

In that case, Personal and Business Insurance ("PBI") was used as a pawn in an illegal scheme perpetrated by its CEO and sole owner, Emil Kesserling ("Kesserling"). *In re PBI*, at p. 240. Kesserling obtained fraudulent loans from a lender, Premium Finance Specialists (the "Lender") in the name of the debtor or other entities for whom the debtor acted as broker. *In re PBI*, at p. 241. Kesserling then converted the loan proceeds to his own use. *In re PBI,* at p. 241. To conceal his scheme, Kesserling caused the debtor, PBI, to make payments to the Lender on the fraudulent loans using PBI funds. *Id.*

The trustee for PBI sought avoidance and recovery of the payments as fraudulent conveyances under § 548 of the Bankruptcy Code. The District Court affirmed the dismissal of the case by the Bankruptcy Court, reasoning that by virtue of Kesserling using PBI in his scheme, PBI owed the Lender a debt and therefore the payments were consideration for that debt and neither constructively nor actually fraudulent.  *In re PBI*, at pp. 242-43.  The trustee for PBI argued that, even if PBI could be held liable for the fraud of Kesserling, such fraud could not be imputed to the trustee, who represents all of the creditors of the debtor.  *In re PBI,* at p. 242.

The Court of Appeals reversed the decision of the District Court, agreeing with the trustee that he could avoid and recover the transfers for the benefit of all of the debtor's creditors.  In so holding, the Third Circuit considered the fact that the trustee was proceeding under the avoidance powers granted him by the Bankruptcy Code.  *In re PBI*, at pp. 245-46.  By virtue of his appointment, a trustee proceeds with clean hands, even while standing in place of a debtor that is potentially tainted by the fraud of its principal.  *Id.*  In reversing the District Court and Bankruptcy Court, the Court of Appeals determined that a trustee may recover a transfer made by the debtor that benefited its principal to the detriment of the debtor's innocent creditors.

In accordance with the holding of *In re PBI*, the "share loan payments" made by MPA to ColomboBank in payment of Greenbaum's debts

are avoidable as fraudulent transfers and recoverable by the Trustee for distribution to the innocent creditors of MPA.  The Trustee is proceeding against ColomboBank using his avoidance powers under §§ 544 and 548 of the Bankruptcy Code.  The Trustee has clean hands and represents all of MPA's creditors, including those who did not benefit in any way from the share loan payments made by MPA to ColomboBank.

ColomboBank is making the same unsuccessful argument as made by the Lender in *In re PBI* -- that it gave consideration for the fraudulent payments by releasing the liens on the accounts, reducing the debt owed to it or wiring the security deposits to the Agency Account.  The argument fails here for the same reason that it failed in *PBI*: the transferor, MPA, did not owe a debt to ColomboBank and therefore received no consideration from the transfer.

Furthermore, ColomboBank does not have clean hands in this case.  As the Bankruptcy Court found, and as this Court agreed, ColomboBank participated in the fraud being perpetrated by Greenbaum, a former director of the bank.  Bankruptcy Court Opinion, pp. 12-13.  In *In re PBI*, the Lender was not aware of the fraudulent scheme perpetrated by Kesserling and had clean hands, yet the Court of Appeals for the Third Circuit still held that the payments were avoidable.  ColomboBank made the share loan scheme possible by concealing the nature of the accounts, and knew or should have known of the fraudulent scheme.  As such, it should not

be treated better than the Lender in the *PBI* case, and the fraudulent transfers to ColomboBank should likewise be avoidable.

## CONCLUSION

The Trustee has respectfully moved for rehearing in this matter because the District Court based its opinion on the erroneous factual conclusion that MPA's only creditors were the Partnerships. To the contrary, MPA has other creditors, and these non-Partnership creditors were damaged by the fraudulent transfer, which depleted MPA funds available to satisfy their claims. In addition, the Bankruptcy Court found that the Partnerships were also damaged by the share loan scheme, which allowed Greenbaum's fraud to go undetected for years.

The share loan transfers were made with the actual intent to hinder, delay or defraud the creditors of MPA. The fraudulent transfer of MPA's money to ColomboBank benefited only Greenbaum and ColomboBank to the detriment of the innocent creditors of MPA. The transfers were not a "wash" and there will be no "double recovery" by the creditors of the Debtor. ColomboBank has confused the record and misstated the factual findings of the Bankruptcy Court. The Trustee is before this Court as representative of the innocent creditors seeking avoidance and recovery of the actually fraudulent transfers. The July 16, 2003 Order of this Court makes ColomboBank whole to the detriment of MPA and its innocent creditors. The

liability for the fraud should be placed where it belongs, on the party with unclean hands, ColomboBank.

Dated: August 28, 2003.                    /s/ Charles M. Campisi
                                           John A. Roberts
                                           Federal Bar No. 04969
                                           Charles M. Campisi
                                           Federal Bar No. 24119
                                           Venable LLP
                                           1800 Mercantile Bank and Trust Bldg.
                                           Two Hopkins Plaza
                                           Baltimore, Maryland  21201
                                           (410) 244-7400

                                           Counsel for Charles R. Goldstein,
                                           Trustee

-18-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of August, 2003, a copy of the Reply Brief to the Opposition to the Motion for Rehearing re Order Reversing the Bankruptcy Court was served via electronic mail and the ECF system on Nelson Deckelbaum, Esquire and Stephen Nichols, Esquire, Deckelbaum, Ogens & Raftery, 3 Bethesda Metro Center, Suite 200, Bethesda, Maryland 20814.

/s/ Charles M. Campisi
Charles M. Campisi