JUDGMENT

FILED: November 19, 2004

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

NO. 03-2163
AP-00-5578
BK-98-53783
CA-02-4010-WDQ

In Re: MARYLAND PROPERTY ASSOCIATES, INCORPORATED;
MARYLAND PROPERTY MANAGEMENT, INCORPORATED; MARYLAND
PROPERTY GROUP, INCORPORATED; MARYLAND GROUP
MANAGEMENT, INCORPORATED; MARYLAND PROPERTY SYSTEMS,
INCOPORATED; MARYLAND PROPERTY SERVICES, INCORPORATED

      Debtors


CHARLES R. GOLDSTEIN, Trustee of the Estate of Maryland
Property Associates, Incorporated, et al.

      Plaintiff - Appellee


v.

COLOMBOBANK F.S.B.

      Defendant - Appellant

----------------------
Appeal from the United States District Court for the
District of Maryland at Baltimore
----------------------

In accordance with the written opinion of this Court filed this day, the Court dismisses the appeal.

A certified copy of this judgment will be provided to the District Court upon issuance of the mandate. The judgment will take effect upon issuance of the mandate.


/s/ Patricia S Connor
_____
CLERK

<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-2163

In Re: MARYLAND PROPERTY ASSOCIATES,
INCORPORATED; MARYLAND PROPERTY MANAGEMENT,
INCORPORATED; MARYLAND PROPERTY GROUP,
INCORPORATED; MARYLAND GROUP MANAGEMENT,
INCORPORATED; MARYLAND PROPERTY SYSTEMS,
INCORPORATED; MARYLAND PROPERTY SERVICES,
INCORPORATED,

Debtors.

CHARLES R. GOLDSTEIN, Trustee of the Estate of Maryland
Property Associates, Incorporated, et al.,

Plaintiff - Appellee,

versus

COLOMBOBANK F.S.B.,

Defendant - Appellant

Appeal from the United States District Court for the District of
Maryland, at Baltimore. William D. Quarles, Jr., District Judge.
(CA-02-4010-WDQ; BK-98-53783; AP-00-5578)

Argued: September 30, 2004          Decided: November 19, 2004

Before WILLIAMS, TRAXLER, and KING, Circuit Judges

Dismissed by unpublished per curiam opinion

**ARGUED:** Christopher Paul Spera, DECKELBAUM, OGENS & RAFTERY, CHARTERED, Bethesda, Maryland, for Appellant. Charles Michael Campisi, VENABLE, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Nelson Deckelbaum, Stephen W. Nichols, DECKELBAUM, OGENS & RAFTERY, CHARTERED, Bethesda, Maryland, for Appellant. John A. Roberts, VENABLE, L.L.P., Baltimore, Maryland, for Appellee.

———

Unpublished opinions are not binding precedent in this circuit See Local Rule 36(c).

**PER CURIAM:**

The Chapter 7 Trustee of Maryland Property Associates, Inc (MPA) brought an adversarial action in the bankruptcy court against ColomboBank (the Bank) to avoid as preferences and fraudulent transfers certain payments MPA made to the Bank. The bankruptcy court tried the action without a jury and voided the payments. The Bank appealed the bankruptcy court's decision to the district court. The district court affirmed in part and vacated and remanded in part, with instructions for the bankruptcy court to make certain factual findings  The Bank appealed the district court's decision to us. Because the district court remanded to the bankruptcy court for further fact-finding, we lack jurisdiction over the appeal.

I

MPA was a real property management company principally owned and operated by Monte Greenbaum.[1] MPA's main clients were certain limited partnerships, which owned low-income apartment complexes (properties) in Maryland  The U.S Department of Housing and Urban Development (HUD) insured the properties and subsidized their tenants' rents  In exchange, HUD required the partnerships to keep their tenants' security deposits in accounts (security

---

[1] This recitation of the facts is gleaned from the bankruptcy court's order, supplemented for clarity by undisputed and clear portions of the record.

3

accounts) for the tenants' benefit. The partnerships kept security accounts at the Bank.

In violation of HUD's regulations, Greenbaum began taking money from the security accounts, putting it into a separate account (operating account) controlled by MPA, where MPA also kept its validly-acquired money, and then using the money in the operating account for his own purposes. In order to conceal his acts from HUD and the partnerships, Greenbaum arranged for the Bank to make loans (share loans) to the partnerships to cover the amount he had misappropriated. Greenbaum structured the share loans, which were deposited into dummy security accounts, such that the loan proceeds themselves secured the loans. With the share-loan money in the dummy security accounts, the total balance on deposit in the security accounts did not reflect the fact that Greenbaum had been taking money therefrom. By filling out false disclosure forms, Greenbaum and the Bank's president hid from HUD and partnerships the fact that the funds in the dummy security accounts were encumbered.[2]

Greenbaum later decided to end the share loan scheme. He wrote several checks to the Bank on MPA's operating account to pay off the share loans. When the Bank received these checks, it released its security interest on the funds in the dummy security

---

[2] Based on his role in the fraud scheme, the bankruptcy court found that the Bank's president "knew or should have known of the fraud." (J.A. at 1248.)

accounts, leaving those accounts unencumbered. Although it is unclear from the record exactly what happened to the money at that point, (J.A. at 1566-70, 1588), the parties agree that it ultimately ended up in the partnerships. (Appellant's Br. at 13; Appellee's Br. at 12-13 )

In addition to the share loans, Greenbaum personally took out two other loans and unofficially borrowed other money from the Bank (non-share loans, collectively).[3] He paid off these personal loans on checks written on MPA's operating account

## II.

On March 17, 1998, the partnerships and other creditors filed an involuntary Chapter 7 bankruptcy petition against MPA.[4] On March 17, 2000, the Trustee, acting on the creditors' behalf, filed adversarial action against the Bank in the bankruptcy court. complaint sought to avoid as preferences and fraudulent transfers the checks Greenbaum wrote to the Bank on MPA's operating account to pay off the loans

---

[3] The record establishes that Greenbaum took out the non-share loans before he started the share loan scheme and that his activity with respect to the non-share loans overlapped with his activity with respect to the share loans. For clarity's sake, we describe the two separately.

[4] It is unclear from the record whether the other creditors joined the partnerships in filing the original petition or later joined in the bankruptcy proceedings. This factual issue is not relevant for purposes of this appeal.

5

On May 14, 2001, the bankruptcy court heard the Trustee's case. On October 16, 2002, the bankruptcy court entered judgment awarding the Trustee the full value of the checks plus interest The Bank appealed to the district court. On August 29, 2003, the district court affirmed in part and vacated and remanded in part The district court affirmed the bankruptcy court's ruling that the share-loan checks were avoidable.[5] The district court vacated the bankruptcy court's ruling that the non-share-loan checks were avoidable because it found that the bankruptcy court had not made specific factual findings as to whether MPA received consideration its payments on the non-share loans. The district court therefore remanded for the bankruptcy court to make specific findings of fact on that issue.

The Bank timely noticed an appeal. After oral argument, we requested, and the parties submitted, supplemental briefing on whether we have jurisdiction over the appeal. We have reviewed that briefing and now conclude that we lack jurisdiction to hear Bank's appeal

---

[5] In an order dated July 16, 2003, the district court reversed that portion of the bankruptcy court's judgment avoiding the share-loan checks because it found that the Bank had returned the money to the partnerships, and that the Trustee, as the partnerships' representative, had therefore suffered no harm by the share-loan scheme. The Trustee moved for reconsideration, arguing that MPA had creditors other than the partnerships, and that by paying the partnerships' debt with MPA's money, the share-loan scheme harmed MPA's non-partnership creditors. The district court agreed, vacated its earlier order as to the share-loan payments, and affirmed the bankruptcy court's decision to avoid the share-loan checks.

6

### III.

We have jurisdiction under 28 U.S.C.A. § 158(d) (West 1993 to hear appeals from cases originating in the bankruptcy court. Capitol Credit Plan of Tenn., Inc. v. Shaffer, 912 F.2d 749, (4th Cir. 1990) (holding that section 158(d) alone provides appellate jurisdiction for cases originating in the bankruptcy court). Section 158(d), however, does not grant us authority to hear all such appeals. Rather, under that section we may only review "final decisions, judgments, orders, and decrees" entered by the district court. 28 U.S.C.A. § 158(d). We have held that a district court's order is not "final" under section 158(d) if it remands the case with an instruction for the bankruptcy court to conduct further fact-finding. Shaffer, 912 F.2d at 750 (holding that district court order remanding to the bankruptcy court to make additional factual findings was not "final" under section 158(d) Legal Representative for Future Claimants v. Aetna Cas. & Sur. Co. (In re The Wallace & Gale Co.), 72 F.3d 21, 24 (4th Cir. 1995) (LRFC) (same).[6]

---

[6] A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) and Cooper v. Delaware Valley Shippers (In re Carolina Motor Express Inc.), 949 F.2d 107 (4th Cir. 1991), rev'd on other grounds sub nom. Reiter v. Cooper, 507 U.S. 258 (1993) are not to the contrary. In Piccinin, we asserted jurisdiction under 28 U.S.C. § 1291, which, like section 158(d), has a finality requirement, over an appeal from the district court's order fixing venue in all tort suits against the debtor. 788 F.2d at 1009. In Cooper we asserted jurisdiction under section 158(d) over an appeal from the district court's order referring certain legal questions to the Interstate Commerce Commission. Id. at 108 n. 1. These holdings do not conflict with Shaffer and LRFC, which hold that a district court

7

A majority of our sister circuits also follow this approach. See In re Lopez, 116 F.3d 1191, 1192 (7th Cir. 1997) (cataloguing cases and observing that the D.C., First, Second, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits so hold) (citations omitted). The minority view is that the finality of district court orders should be determined by an approach that weighs several factors to determine whether the appeal would further the goals of bankruptcy. See id. at 1193 (noting that the Third, Ninth, and possibly the Sixth Circuits apply such an approach) (citations omitted). Under the minority view, whether the district court remands to the bankruptcy court with instructions to conduct additional fact-finding is a relevant, but not dispositive, factor See, e.g., Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000) (in determining whether a district court's decision is "final" under section 158(d) applying four-factor test that examines: (1) the impact the case has on the assets of the bankruptcy estate; (2) the necessity of further fact-finding on remand; (3) the preclusive

---

order remanding to the bankruptcy court to make findings of fact is not a final order under section 158(d).
  To be sure, the Piccinin and Cooper courts did note that we generally apply a more "relaxed" definition of finality in the bankruptcy context. 788 F.2d at 1009; 949 F.2d at 108 n. 1. We do not disagree with that statement. To resolve the case before us, however, it is enough to say that whatever it might mean to apply a "relaxed" definition of finality, it cannot mean that we have jurisdiction under section 158(d) over a district court order remanding to the bankruptcy court to make additional findings of fact. See Shaffer, 912 F.2d at 750; LRFC, 72 F.3d at 24.

8

effect of the decision on the merits of further litigation, and (4) the interest of judicial economy)

Ignoring Shaffer and LRFC on this point, the Trustee[7] simply asserts that we must follow Buncher, 229 F.3d at 250.[8] Buncher's approach, however, is irreconcilable with Shaffer's and LRFC's categorical rule, and we, as a panel, lack the authority to overrule prior circuit precedent. See McMellon v. United States, 2004 WL 2303487, *2 (4th Cir. Oct. 14, 2004) "one panel cannot overrule a decision issued by a prior panel" Moreover, the

---

[7] The Bank concedes that we lack jurisdiction over its appeal. It nevertheless asks us to declare that the Trustee may not execute the district court's judgment as to the share-loan transfers. The Bank does not explain how, if we lack jurisdiction over the appeal, we have jurisdiction to make such a declaration. We therefore deny its request.

[8] The Trustee also argues that we have jurisdiction over the district court's judgment insofar as it applies to the share-loan transactions because the judgment was final as to those transactions. This argument reveals a fundamental misunderstanding of the concept of finality. A judgment is not final simply because the district court has resolved some aspects of the appeal; instead, the very fact that other aspects remain unresolved is precisely what makes this appeal interlocutory.

To the extent that we can construe the Trustee's argument to be an implied assertion that we have jurisdiction under the collateral order doctrine, we would still reject the argument. "To be reviewable under that doctrine, an order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action and be effectively unreviewable on appeal from a final judgment." LRFC, 72 F.3d at 24 (quotation marks omitted). Far from being separate from the merits of the action, the share-loan transactions go to the very heart of the Trustee's adversarial complaint. Moreover, the Trustee has not suggested that, and we can decipher no reason why, the district court's conclusion regarding the share-loan payments will not be appealable when the district court enters a final judgment.

9

approach pressed by the Trustee is "*terribly* woolly," when "[j]urisdictional rules ought to be simple and precise." <u>In re Lopez</u>, 116 F.3d at 1194 (emphasis in original). In short, approach we adopted in <u>Shaffer</u> and <u>LRFC</u> is the "sounder rule" in this context. <u>Id.</u>

## IV

Under the <u>Shaffer</u>/<u>LRFC</u> rule, we lack jurisdiction over Bank's appeal because the district court remanded to the bankruptcy court to make additional findings of fact. Accordingly, we dismiss the appeal

<u>DISMISSED</u>